IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| NATHAN JOHN BISHOP,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 22-36-H-SEH<br><br>ORDER |

## INTRODUCTION

Plaintiff Nathan John Bishop, following an administrative law judge (ALJ) hearing,[1] appealed the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[2] The matter is fully briefed and ripe for ruling.

The ALJ's decision[3] is supported by substantial evidence, not based on legal error, and is affirmed.

---

[1] Doc. 4 at 53–88.
[2] *Id.* at 19–46.
[3] *Id.*

1

## PROCEDURAL BACKGROUND

Bishop's claim of disability began February 10, 2017.[4] He filed for disability and disability benefits on April 19, 2018.[5] The claim was denied initially, upon reconsideration, and at the hearing level.[6] The ALJ's decision was rendered on November 5, 2021.[7] Request for review was denied on March 31, 2022.[8]

The ALJ's November 5, 2021, decision, denying Bishop's application for disability benefits, concluded, *inter alia*:

> 1. Bishop "meets the insured status requirements of the Social Security Act through June 30, 2022."[9]
>
> 2. Bishop "has not engaged in substantial gainful activity since February 10, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*)."[10]
>
> 3. Bishop "has the following severe impairments: degenerative disc disease of the lumbar spine; sacroiliitis and bursitis; headaches; traumatic brain injury with a neurocognitive disorder; depression; anxiety; attention-deficit hyperactivity disorder (ADHD); post-traumatic stress disorder (PTSD); and polysubstance abuse (20 CFR 404.1520(c))."[11]
>
> 4. Bishop "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

---

[4] *Id.* at 266.
[5] *Id.*
[6] *Id.* at 19.
[7] *Id.* at 46.
[8] *Id.* at 7–11.
[9] *Id.* at 21.
[10] *Id.*
[11] *Id.* at 22.

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."[12]

5. "[F]rom February 10, 2017 through July 20, 2018, and from July 21, 2019 through the present, [Bishop] has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), in that he can lift/carry/push/pull 25 pounds occasionally, and 50 pounds frequently. He can stand and/or walk for about six hours in an 8-hour workday with normal breaks, and can sit for about six hours in an 8-hour workday with normal breaks. Normal breaks are defined as breaks occurring every two hours with two breaks lasting at least 10 minutes, and one lasting at least 30 minutes. He can understand, remember, and carry out simple tasks, and can maintain attention, concentration, persistence, and pace for such tasks for an 8-hour workday and 40-hour workweek. He can tolerate interaction with supervisors, co-workers, and the public. He can tolerate usual simple work situations. He can tolerate occasional changes in a routine work setting. He can never work at a fast or fixed production rate or pace, but can perform goal-oriented work."[13]

6. "[F]rom July 21, 2018, through July 20, 2019, [Bishop] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(c), in that he could lift/carry/push/pull 10 pounds occasionally, and less than 10 pounds frequently. He could stand and/or walk for about four hours in an 8-hour workday, and could sit for about six hours in an 8-hour workday. He could occasionally climb ramps or stairs, balance on uneven surfaces, stoop, kneel, and crouch. He could never climb ladders, ropes, or scaffolds, crawl. He must have avoided concentrated exposure to hazards. He

---

[12] *Id.* at 24.
[13] *Id.* at 28.

3

could understand, remember, and carry out simple tasks, and could maintain attention, concentration, persistence, and pace for such tasks for an 8-hour workday and 40-hour workweek. He could tolerate interaction with supervisors, co-workers, and the public. He could tolerate usual simple work situations. He could tolerate occasional changes in a routine work setting. He could never work at a fast or fixed production rate or pace, but can perform goal-oriented work."[14]

7. Bishop "is unable to perform any past relevant work (20 CFR 404.1565)."[15]

8. Bishop "was born on June 7, 1973 and was 43 years old, which is defined as a younger individual age 18-49, on alleged disability onset date (20 CFR 404.1564)."[16]

9. Bishop "has at least a high school education (20 CFR 404.1564)."[17]

10. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Bishop] is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."[18]

11. "From February 10, 2017 through July 20, 2018, and from July 21, 2019 through the present, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that

---

[14] *Id.* at 41–42.
[15] *Id.* at 43.
[16] *Id.*
[17] *Id.*
[18] *Id.*

4

      [Bishop] can perform (20 CFR 404.1569 and 404.1569a)."[19]

12. "[F]rom July 21, 2018 through July 20, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Bishop] could have perform (20 CFR 404.1569 and 404.1569a)."[20]

13. Bishop "has not been under a disability, as defined in the Social Security Act, at any time from February 10, 2017, through the date of this decision (20 CFR 404.1520(g))."[21]

Judicial review in this Court was sought.[22] Briefs were filed.[23]

## LEGAL STANDARD

A disability benefits claimant may seek limited judicial review from an adverse decision by the Commissioner.[24] A court may disturb an ALJ's decision denying disability "benefits only if it is not supported by substantial evidence or is based on legal error."[25]

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

---

[19] *Id.*
[20] *Id.* at 44.
[21] *Id.* at 45.
[22] Doc. 1.
[23] *See* Docs. 7–9.
[24] *See* 42 U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).
[25] *Treichler*, 775 F.3d at 1098 (cleaned up).

5

adequate to support a conclusion."[26] The court must uphold an ALJ decision if a legal error is harmless.[27]

Review of an individual's disability status involves five steps:[28]

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 200, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).[29]

The claimant must establish steps one, two, three, and four.[30] The Commissioner must establish step five.[31]

---

[26] *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).
[27] *Treichler*, 775 F.3d at 1099.
[28] *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).
[29] *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).
[30] *See Tackett*, 180 F.3d at 1098 (9th Cir. 1999).
[31] *Id.*

## DISCUSSION

Plaintiff raises the following issues for review: whether the ALJ erred (1) in discrediting Bishop's testimony; (2) by not considering the combined effects of Bishop's impairments; (3) in evaluating the medical opinion evidence; (4) by finding that Bishop can work on a regular and continuing basis; and (5) by posing a hypothetical question to the Vocational Expert unsupported by substantial evidence.[32] Each will be addressed.

### A. The ALJ did not err in discrediting Bishop's testimony.

Credibility of a claimant's testimony is analyzed in two steps.[33] First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.[34] Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear, and convincing reasons" for doing so.[35]

To find the claimant's testimony unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to

---

[32] Doc. 7 at 3.
[33] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).
[34] *Id.*
[35] *Id.*; *see Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases." (cleaned up)).

conclude that the ALJ did not arbitrarily discredit claimant's testimony."[36] To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failures to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.[37]

Bishop argues the ALJ failed to adequately credit his subjective testimony in making her disability determination.[38] She initially determined Bishop's medically determinable impairments could reasonably be expected to cause his symptoms, and that there was no evidence of malingering.[39] She was required to cite specific, clear, and convincing reasons for rejecting Bishop's subjective testimony about the severity of his symptoms. She did so.

The ALJ repeatedly found Bishop's statements concerning intensity, persistence, and limiting effects of alleged symptoms were not entirely consistent or substantiated with the medical evidence and other evidence in the record.[40] Her discernible analysis of both the objective medical evidence and Bishop's subjective testimony demonstrated she did not arbitrarily discredit Bishop's disability allegations.[41] Additionally, the ALJ recognized Bishop's attempt to downplay his

---

[36] *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (cleaned up).
[37] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).
[38] Doc. 7 at 9–17.
[39] Doc. 4 at 29.
[40] *See* Doc. 4 at 29, 38, 42, 43.
[41] *See Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc).

8

marijuana and alcohol use when compared to his substance use documented in medical records, thereby further supporting her reasoning for discounting Bishop's testimony.[42]

The Court may not substitute its own interpretation of the evidence for the ALJ's interpretation,[43] which adequately provided specific, clear, and convincing reasons for rejection of Bishop's subjective testimony by reviewing his objective medical evidence, his subjective testimony, and by detailing her analysis of that review. The ALJ did not err in finding Bishop's testimony not credible.

**B. The ALJ did not err by not considering the combined effects of Bishop's impairments.**

If a claimant suffers from multiple impairments, the ALJ must consider the combined effect of all the claimant's impairments when assessing the claimant's residual functional capacity.[44] Evaluation of the combined effects of the impairments must be adequately explained.[45]

Bishop argues the ALJ failed to consider the combined effects of his impairments because she "evaluated each impairment individually."[46] While the

---

[42] *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (noting that an ALJ may properly rely on failures to follow prescribed courses of treatment in assessing a claimant's credibility).
[43] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that if the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing").
[44] *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996).
[45] *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).
[46] Doc. 9 at 4.

9

ALJ carefully analyzed each impairment separately, her final conclusions were the culmination of the combined effects of Bishop's impairments.[47] Additionally, the ALJ provided multiple residual functional capacity findings to address Bishop's combined impairments,[48] which demonstrated consideration of the combined effects of Bishop's impairments. The ALJ did not err by not considering the combined effects of Bishop's impairments.

### C. The ALJ did not err in evaluating the medical opinion evidence.

An ALJ cannot reject a doctor's opinion "without providing an explanation supported by substantial evidence."[49] Such an explanation must "explain how it considered the supportability and consistency factors in reaching these findings."[50]

Supportability is present if a medical source supports the medical opinion by explaining relevant, objective medical evidence.[51] Consistency exists if a medical opinion is consistent with evidence from other medical sources and nonmedical sources in the claim.[52] Further, for applications such as Bishop's filed after March 27, 2017, statements on issues reserved to the Commissioner are "inherently

---

[47] *See* Doc. 4 at 28–43.
[48] *Id.* at 28, 41–42.
[49] *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).
[50] *Id.* (cleaned up).
[51] *Id.* at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)).
[52] *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

neither valuable nor persuasive" under revised regulations on how ALJs consider evidence.[53]

Bishop argues the ALJ erred in evaluating the medical opinion evidence, specifically, her finding that the medical opinion of Bowman Smelko, Psy.D. was unpersuasive.[54] She also considered medical opinions of Nicole Clark, M.D. and Mark Deitz, M.D., among others, finding them unpersuasive as well.[55] Dr. Smelko's report was found unpersuasive because it was internally inconsistent, vague, and speculative.[56] Dr. Smelko's opinion on issue (1) was reserved for decision by the Commissioner, (2) did not contain a function-by-function analysis of Bishop's limitations, and (3) was inconsistent with the "relatively benign mental status findings over any continuous 12-month period since the alleged onset date."[57]

The ALJ found Dr. Clark's and Dr. Deitz's reports unpersuasive, holding their opinions (1) addressed issues reserved for decision by the Commissioner and (2) did not contain function-by-function analyses of Bishop's limitations.[58] The ALJ also found Dr. Deitz's opinion "speculative at best."[59]

---

[53] 20 C.F.R. § 404.1520b(c)(3).
[54] Doc. 7 at 19–21.
[55] *See* Doc. 4 at 40–41.
[56] *Id.* at 40.
[57] *Id.*
[58] *Id.* at 40–41.
[59] *Id.* at 41.

11

The ALJ in substance addressed both supportability and consistency in her opinion. Both were found to be present. All medical evidence and records available to the ALJ in making her determination were considered.[60] Medical opinion evidence was not inappropriately considered.

### D. The ALJ did not err by finding Bishop can work on a regular and continuing basis.

Residual function capacity refers to "an individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis."[61] "A regular and continuing basis means eight hours a day, for 5 days a week, or an equivalent work schedule."[62]

Bishop argues the ALJ failed to adequately discuss his ability to perform sustained work activities.[63] The ALJ sufficiently found Bishop could work on a regular and continuing basis when considering all the medical evidence and records available and detailed in her analysis.[64] The ALJ did not err by finding Bishop can work on a regular and continuing basis.

---

[60] *See* Doc. 4 at 22–41.
[61] SSR 96-8p, 61 Fed. Reg. 34474-01, at 34474, 1996 WL 362207 (July 2, 1996).
[62] SSR 96-8p, 61 Fed. Reg. at 34475 (cleaned up).
[63] *See* Doc. 7 at 22–23.
[64] *See* Doc. 4 at 22–41. Further, any failure by the ALJ to consider nonmedical source statements was harmless, as they did not materially differ from Bishop's subjective complaints. *See Molina*, 674 F.3d at 1117; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### E. The ALJ did not err by posing a hypothetical question to the Vocational Expert that is not supported by substantial evidence.

Hypothetical questions posed to the vocational expert must set out the claimant's limitations and restrictions.[65] Vocational expert testimony "is valuable only to the extent that it is supported by medical evidence."[66] A vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value if the assumptions in the hypothetical are unsupported by the record.[67]

Bishop argues the ALJ erred because the hypotheticals posed to the Vocational Expert failed to include limitations well documented in the record, specifically limitations identified from Bishop's subjective testimony.[68] The ALJ's stated reasons for discounting Bishop's testimony were adequately supported by the record. The ALJ was correct in determination of Bishop's disability status.

**ORDERED:**

The ALJ's decision[69] is **AFFIRMED**.

DATED this 16th day of December 2022.

SAM E. HADDON
United States District Judge

---

[65] *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).
[66] *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).
[67] *Embrey*, 849 F.2d at 422 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).
[68] Doc. 7 at 23–25.
[69] Doc. 4 at 19–46.